No. 23-2765

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

Nikkolai Anderson,

Plaintiff-Appellant,

v.

Mott Street,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
Case No. 1:20-cv-07721
The Honorable Thomas M. Durkin, Judge Presiding

_____

**BRIEF OF DEFENDANT-APPELLEE MOTT STREET**
_____

Brian J. Sharpe
TROESTER SHARPE, P.C.
1200 Shermer Road, Suite 425
Northbrook, Illinois 60062
(847) 786-2505
bsharpe@troestersharpe.com
*Attorney for Mott Street*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2765

Short Caption: Nikkolai Anderson v . Mott Street

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
       Mai Chi Corp. d/b/a Mott Street

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
       Troester Sharpe P.C. (which was formerly known as LaPointe Law, P.C. until January 1, 2024) represented

       Mott Street during the district/appellate court proceedings. Vedder Price represented Mott Street before the EEOC.

(3)    If the party, amicus or intervenor is a corporation:

       i)       Identify all its parent corporations, if any; and

                None

       ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

                None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

        N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

        N/A

---

Attorney's Signature: /s/ Brian J. Sharpe                    Date:  March 29, 2024

Attorney's Printed Name:  Brian J. Sharpe

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** [✔]  **No** [ ]

Address:  Troester Sharpe, P.C.; 1200 Shermer Road, Suite 425; Northbrook, IL 60062

Phone Number: (847) 786-2505                         Fax Number: (847) 786-2650

E-Mail Address: bsharpe@troestersharpe.com

# TABLE OF CONTENTS

PAGE

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT** ............................................ i

**TABLE OF CONTENTS** ............................................................................... ii

**TABLE OF AUTHORITIES** ........................................................................ v

**JURISDICTIONAL STATEMENT** ............................................................... 1

**STATEMENT OF THE ISSUES** ................................................................... 2

**STATEMENT OF THE CASE** ...................................................................... 2

**I**. **Anderson's Employment and Separation of Employment at Mott Street** ............................... 3

    a. The Parties ................................................................................... 3

    b. Mott Street's Commitment to Fostering a Respectful Workplace .......................................... 4

    c. The Host Position .......................................................................... 5

    d. The Partners Independently Observe Anderson's Rude Demeanor. ......................................... 6

    e. The First Batch of Negative Social Media Reviews ........................... 8

    f. Melazzo's Email and Chung's Coaching Session ............................ 9

    g. The Second Batch of Negative Social Media Reviews ..................... 9

    h. Anderson's Insubordination ....................................................... 11

    i. The August 26, 2017 Email ......................................................... 12

    j. The Final Negative Social Media Review .................................... 12

    k. Anderson's Termination ............................................................. 13

**II. Mott Street's Comparators and Subsequent Hires** ......................... 15

**III. Anderson's Claims at issue in this Appeal** .......................16

    a. Anderson's Sexual Harassment Claim ...................16

    b. Anderson's Sex Discrimination Claim ...................17

    c. Anderson's Retaliation Claim ...................18

**SUMMARY OF ARGUMENT** ...................19

**ARGUMENT** ...................21

**I. The District Court did not abuse its discretion regarding Anderson's failure to comply with L.R. 56.1** ...................21

    a. Standard of Review. ...................21

    b. Requirements of L.R. 56.1 ...................21

    c. Anderson clearly failed to comply with L.R. 56.1. ...................22

**II. Anderson was not subject to actionable "sexual harassment."** ...................23

    a. Summary Judgment Standard and Standard of Review ...................23

    b. Anderson's sexual harassment arguments have been waived. ...................24

    c. The "high bar" to establish actionable sexual harassment ...................24

    d. Anderson's evidence falls well short of being "severe or pervasive." ...................25

**III. Anderson was not subject to sex discrimination** ...................29

    a. Anderson's "sex discrimination" claim is just a regurgitation of her "sexual harassment" claim. ...................29

    b. Legal Standard ...................29

    c. Anderson was treated no differently than male coworkers. ...................30

    d. Anderson failed to meet expectations, and Mott Street's reasons for her termination were not pretextual. ...................32

e. There is no inference of sex discrimination. ...............................35

**IV.  Anderson was not subject to retaliation**...........................36

a. Legal Standard..............................................................36

b. Anderson's retaliation claim has been waived .......................37

c. Anderson did not engage in any "protected activity." .............37

d. There was no causal connection between Anderson's
   termination and the emails she sent. .......................................39

e. There was no pretext.......................................................40

**CONCLUSION** ...................................................41

**CERTIFICATE OF COMPLIANCE**..................................42

**CERTIFICATE OF SERVICE** .........................................43

# TABLE OF AUTHORITIES

## CASES                                                                PAGE

*Abebe v. Health & Hosp. Corp. of Marion Cty.*,
35 F.4th 601 (7th Cir. 2022) ........................................................ 31

*Adusumilli v. City of Chi.*,
164 F.3d 353 (7th Cir. 1998) ....................................................... 26

*Afridi v. BNSF Ry. Co.*,
No. 18-CV-8205, 2022 U.S. Dist. LEXIS 200019 (N.D. Ill. Nov. 3, 2022)................ 12

*Allen v. City of Chi.*,
865 F.3d 936 (7th Cir. 2017) ....................................................... 19

*Anderson v. Stauffer Chem. Co.*,
965 F.2d 397 (7th Cir. 1992) ....................................................... 35

*Baskerville v. Culligan Int'l Co.*,
50 F.3d 428 (7th Cir. 1995) ........................................................ 27

*Bell v. City of Chi.*,
No. 03 C 2117, 2004 U.S. Dist. LEXIS 25889 (N.D. Ill. Dec. 17, 2004) .................... 29

*Boykin v. Chess*,
No. 16 CV 50161, 2020 U.S. Dist. LEXIS 12731 (N.D. Ill. Jan. 27, 2020) ............... 22

*Briggs v. SMG Food & Bev., L.L.C.*,
No. 20 C 1733, 2022 U.S. Dist. LEXIS 131391 (N.D. Ill. July 25, 2022)................ 27

*Brooks v. Avancez*,
39 F.4th 424, 435 (7th Cir. 2022)........................................... 25, 32

*Brown v. Bd. of Trs. of the Univ. of Ill.*,
673 F. App'x 550 (7th Cir. 2016).......................................... 39-40

*Carlson v. CSX Transp., Inc.*,
758 F.3d 819 (7th Cir. 2014) ....................................................... 37

*Casna v. City of Loves Park*,
574 F.3d 420 (7th Cir. 2009) ....................................................... 40

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................ 23

*Cichon v. Exelon Generation Co., LLC*,
401 F.3d 803 (7th Cir. 2005) ..................................................... 21-22

*Cole v. Bd. of Trs.*,
838 F.3d 888 (7th Cir. 2016) ............................................................ 37

*Coleman v. Donahoe*,
667 F.3d 835 (7th Cir. 2012) ..................................................... 30, 32

*Curtis v. Costco Wholesale Corp.*,
807 F.3d 215 (7th Cir. 2015) ..................................................... 21, 22

*Durkin v. City of Chi.*,
341 F.3d 606 (7th Cir. 2003) ..................................................... 38, 39

*EEOC v. Costco Wholesale Corp.*,
903 F.3d 618 (7th Cir. 2018) ............................................................ 26

*Fane v. Locke Reynolds, LLP*,
480 F.3d 534 (7th Cir. 2007) ............................................................ 34

*Fredericks v. Adventist La Grange Mem'l Hosp.*,
580 F. App'x 477 (7th Cir. 2014) ..................................................... 32

*Gabrielle M. v. Park Forest-Chicago Heights*,
315 F.3d 817 (7th Cir. 2003) ............................................................ 25

*Gaines v. K-Five Constr. Corp.*,
742 F.3d 256 (7th Cir. 2014) ..................................................... 15, 31

*Gates v. Caterpillar, Inc.*,
513 F.3d 680 (7th Cir. 2008) ................................................. 33, 38, 39

*Ghosh v. Ind. Dep't of Envtl. Mgmt.*,
192 F.3d 1087 (7th Cir. 1999) .......................................................... 32

*Griffin v. Teamcare*,
909 F.3d 842 (7th Cir. 2018) ............................................................ 15

*Gunville v. Walker*,
583 F.3d 979 (7th Cir. 2009) ............................................................ 23

*Hammel v. Eau Galle Cheese Factory,*
407 F.3d 852 (7th Cir. 2005) ................................................................. 23

*Hanners v. Trent,*
674 F.3d 683 (7th Cir. 2012) ................................................................. 30

*Hilt Dyson v. City of Chicago,*
282 F.3d 456 (7th Cir. 2002) ................................................................. 27

*Hubbard v. M & K Truck Ctrs.,*
No. 18 C 8343, 2020 U.S. Dist. LEXIS 222535 (N.D. Ill. Nov. 30, 2020)................. 27

*Isbell v. Baxter Healthcare, Corp.,*
273 F. Supp. 3d 965 (N.D. Ill. 2017)..................................................... 33-34

*Jarvis v. Sigmatron Int'l Inc.,*
223 F. Supp. 2d 981 (N.D. Ill. 2002) ..................................................... 28

*Kampmier v. Emeritus Corp.,*
472 F.3d 930 (7th Cir. 2007) ................................................................. 28

*Karazanos v. Navistar Int'l Transp. Corp.,*
948 F.2d 332 (7th Cir. 1991) ............................................................. 34-35

*Kensington Rock Island Ltd. P'ship v. Am. Eagle Historic Partners,*
921 F.2d 122 (7th Cir. 1990) ................................................................. 24

*King v. Ford Motor Co.,*
872 F.3d 833 (7th Cir. 2017) ................................................................. 19

*Koelsch v. Beltone Elecs. Corp.,*
46 F.3d 705 (7th Cir. 1995) ................................................................. 27

*Lauth v. Covance, Inc.,*
863 F.3d 708 (7th Cir. 2017) ........................................................... 20, 33

*Logan v. City of Chi.,*
4 F.4th 529 (7th Cir. 2021)................................................................. 39

*Lord v. High Voltage Software, Inc.,*
839 F.3d 556 (7th Cir. 2016) ................................................................. 32

*Loudermilk v. Best Pallet Co.*, LLC,
636 F.3d 312 (7th Cir. 2011) ................................................................ 40

*Luckie v. Ameritech Corp.*,
389 F.3d 708 (7th Cir. 2004) ........................................................... 35, 38

*Mazeika v. Architectural Specialty Prods.*,
No. 05 C 415, 2005 U.S. Dist. LEXIS 15531 (N.D. Ill. July 26, 2005) ........................ 2

*McDonnell Douglas v. Green*,
411 U.S. 792 (1973) .......................................................................... 29

*McKenzie v. Milwaukee Cty.*,
381 F.3d 619 (7th Cir. 2004) ................................................................ 24

*Mercer v. Cook Cty.*,
527 F. App'x 515 (7th Cir. 2013) ............................................................25

*Millbrook v. IBP, Inc.*,
280 F.3d 1169 (7th Cir. 2002) ............................................................... 33

*Miller v. Chi. Transit Auth.*,
20 F.4th 1148 (7th Cir. 2021) ............................................................... 37

*Ortiz v. Werner Enters., Inc.*,
834 F.3d 760 (7th Cir. 2016) ................................................................ 29

*Payne v. Pauley*,
337 F.3d 767 (7th Cir. 2003) ................................................................ 34

*Perez v. Thorntons, Inc.*,
731 F.3d 699 (7th Cir. 2013) ................................................................ 35

*Riley v. Elkhart Cmty. Sch.*,
829 F.3d 886 (7th Cir. 2016) ................................................................ 40

*Robertson v. Wis. Dep't of Health Servs.*,
949 F.3d 371 (7th Cir. 2020) ........................................................... 36, 40

*Shaw v. AutoZone*, Inc.,
180 F.3d 806 (7th Cir. 1999) ................................................................ 39

*Silverman v. Bd. of Educ.*,
637 F.3d 729 (7th Cir. 2011) ............................................................. 2, 33

*Smith v. Chicago Sch. Reform Bd. of Trustees,*
165 F.3d 1142 (7th Cir. 1999) ................................................................ 1

*Smith v. Chi. Transit Auth.,*
806 F.3d 900 (7th Cir. 2015) ................................................................ 30

*Smith v. Illinois Dep't of Trans.,*
936 F.3d 554 (7th Cir. 2019) ................................................................ 27

*St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.,*
919 F.3d 1003 (7th Cir. 2019) .............................................................. 24

*Swinney v. Ill. State Police,*
332 F. App'x 316 (7th Cir. 2009) .......................................................... 37

*Swyear v. Fare Foods Corp.,*
911 F.3d 874 (7th Cir. 2018) ........................................... 23-24, 26-28

*Taylor v. Exxon Mobil Corp.,*
No. 07 C 3172, 2009 U.S. Dist. LEXIS 13988 (N.D. Ill. Feb. 24, 2009) ............ 25

*Tibbs v. City of Chi.,*
469 F.3d 661 (7th Cir. 2006) ................................................................ 22

*Tomanovich v. City of Indianapolis,*
457 F.3d 656 (7th Cir. 2006) ........................................................ 37, 39

*Torres v. All Town Bus Servs.,*
407 Ill. App. 3d 1190 (1st Dist. 2011) .................................................. 1

*Torry v. City of Chi.,*
932 F.3d 579 (7th Cir. 2019) ................................................................ 12

*Treadwell v. Office of the Ill. Sec. of State,*
455 F.3d 778 (7th Cir. 2006) ................................................................ 32

*Vela v. Vill. of Sauk Vill.,*
218 F.3d 661 (7th Cir. 2000) ................................................................ 29

*Weiss v. Coca–Cola Bottling Co.,*
990 F.2d 333 (7th Cir. 1993) ................................................................ 27

*Whittaker v. N. Ill. Univ.*,
424 F.3d 640 (7th Cir. 2005) ................................................................ 25

*Williams v. Univ. of Chicago Med. Ctr.*,
No. 11 C 9015, 2014 U.S. Dist. LEXIS 133193 (N.D. Ill. Sep. 23, 2014) .................. 27

*Woods v. City of Chi.*,
234 F.3d 979 (7th Cir. 2000) ................................................................ 14

*Worth v. Tyer*,
276 F.3d 249 (7th Cir. 2001) ................................................................ 28

**STATUTES**

28 U.S.C. § 1291 ................................................................................. 1

28 U.S.C. § 1331 ................................................................................. 1

28 U.S.C. §1367 .................................................................................. 1

42 U.S.C. § 2000e *et seq* ....................................................................... 1

42 U.S.C. § 2000e-3(a) .......................................................................... 36

42 U.S.C. § 2000e-5(f)(3) ........................................................................ 1

**RULES**

Fed. R. App. P. 4(a)(1)(A) ....................................................................... 1

Fed. R. Civ. P. 56(a) ............................................................................ 23

N.D. Ill. Local Rule 56.1 ................................................................. 14, 18, 21, 22

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant Nikkolai Anderson's ("Anderson") jurisdictional statement is not complete and correct. The United States District Court for the Northern District of Illinois had subject-matter jurisdiction over Anderson's lawsuit pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3) because she brought three federal claims (sexual harassment, sex discrimination, and retaliation), pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.* (A. 1-7.)[1] The District Court had supplemental jurisdiction over Anderson's common-law claim of intentional infliction of emotional distress (the dismissal of which is not being challenged on appeal) pursuant to 28 U.S.C. § 1367(a), because the claim arose from the same common nucleus of operative facts. (A. 1-7.)

On August 14, 2023, the District Court granted summary judgment in Defendant-Appellee Mott Street's favor on all counts and dismissed the action with prejudice. (A. 204-28.) Final judgment was entered the same day. (A. 229.) On September 10, 2023, Anderson filed a notice of appeal within thirty days of entry of the District Court's final judgment as required by Fed. R. App. P. 4(a)(1)(A). (R. 73.) The Circuit Court of Appeals for the Seventh Circuit has appellate jurisdiction pursuant to 28 U.S.C. § 1291 because this appeal is from a final judgment of the District Court that disposed of all claims against all parties.[2] [3]

---

[1] "(A. #.)" refers to Bates numbered documents in Appellant's Appendix. "(R. #.)" refers to the District Court's CM/ECF docket number. If applicable, "p." shall refer to the CM/ECF page number, and "¶" shall refer to a specific paragraph contained within the document.

[2] Anderson's abandoned IIED claim was clearly time barred and preempted by the Illinois Human Rights Act. *See Torres v. All Town Bus Servs.*, 407 Ill. App. 3d 1190, *10 (1st Dist. 2011); *Smith v. Chicago Sch. Reform Bd. of Trustees*, 165 F.3d 1142, 1151 (7th Cir. 1999).

**STATEMENT OF THE ISSUES**

(1)     Whether summary judgment in favor of Mott Street was proper on Anderson's sexual harassment claim where Anderson—during her deposition—failed to specifically identify any offensive behavior that was either "severe or pervasive."

(2)     Whether summary judgment in favor of Mott Street was proper on Anderson's sex discrimination and retaliation claims where Anderson, a host at a gourmet restaurant, was terminated for being rude and insubordinate, and she failed to identify any evidence of pretext, a legally-protected activity, or a male worker—or any other worker for that matter—who was treated more favorably.

**STATEMENT OF THE CASE**

Quite simply, many diners at Mott Street—a gourmet restaurant in Chicago—complained that Ms. Anderson was "rude," and they posted about their unpleasant experiences on social media. (*See generally* R. 58-5; 58-7; 58-9; 58-11; 58-12.) Mott Street's four owners observed Anderson's rude demeanor firsthand, all while Anderson refused to follow instructions, which is why she was terminated. That's really it. Rather than accepting responsibility, in her *fourth* legal proceeding against a former employer, Anderson brought vague claims of sexual harassment, sex discrimination, and retaliation, which are entirely baseless.

---

The claim also fails on the merits for reasons discussed herein. *See e.g. Mazeika v. Architectural Speciality Prods.*, No. 05 C 415, 2005 U.S. Dist. LEXIS 15531, at *14 (N.D. Ill. July 26, 2005) (collecting cases).

[3] Anderson exhausted administrative remedies with the EEOC. Generally speaking, the EEOC's determination has no probative value in a subsequent lawsuit or appeal. *See e.g. Silverman v. Bd. of Educ.*, 637 F.3d 729, 732 (7th Cir. 2011).

I.    **Anderson's Employment and Separation of Employment at Mott Street**

    *a. The Parties*

"Mott Street" is an Asian-inspired, minority-owned gourmet restaurant located in the Wicker Park neighborhood of Chicago. (R. 58-5, ¶2-3 [Nathaniel Chung's Declaration].) Mott Street is owned by four partners (the "Partners"):

    (1) CEO and Executive Chef Edward Kim ("Kim");

    (2) General Manager Nathaniel "Nate" Chung ("Chung"), who is responsible for overseeing Mott Street's "Front of the House" ("FOTH") operations, including ensuring positive guest experiences and supervising hosts, servers, server assistants, and bar staff;

    (3) Edward Kim's wife, Jennifer Kim, who primarily worked at another restaurant called "Ruxbin" (which has since closed); and

    (4) Edward Kim's sister, Victoria "Vicki" Kim, who also worked primarily at Ruxbin.

(R. 58-5, ¶1-7.)

Significantly, Mott Street enjoys a very positive reputation both on social media and within the industry. For example, as of April 2023, Mott Street had a 4/5-star rating on "Yelp," a 4.6/5 star "exceptional" rating on "OpenTable," and a 4.3/5-star rating on Mott Street's Facebook page. (R. 58-5, ¶16.) Ever since 2013, Mott Street has been awarded the Michelin Guide's prestigious "Bib Gourmand" rating, which recognizes "friendly establishments that serve good food at moderate prices." (R. 58-5, ¶17.) The Partners are proud of these accolades and make every

effort to preserve their positive reputation. (R. 58-5, ¶15-18.) Negative social media reviews can negatively impact the restaurant's business overall. (R. 58-5, ¶15.)

Chung hired Anderson on approximately September 15, 2015, as a "host" (sometimes called a "hostess"), where she worked until September 22, 2017, when Chung and Kim terminated her employment for being rude, insubordinate, and accruing *eight* negative social media reviews. (R. 58-5, ¶19, 48-50.) Anderson is no stranger to litigation, and Mott Street is the **fourth** employer that she has brought claims against. (A. 43-44 [Tr. I 8:4-13:21].)[4] At some point, Anderson's coworkers began referring to her as the "lead host" since she was the longest tenured host and responsible for seating arrangements when two hosts were on duty. (R. 69-1, ¶ 6-7.)

### b. *Mott Street's Commitment to Fostering a Respectful Workplace*

Mott Street prides itself on being an equal opportunity employer with a diverse staff. (R. 58-5, ¶13.) Chung, who identifies as "Asian and Queer," is proud to hire and employ individuals from underrepresented communities and foster an inclusive workplace. (R. 58-5, ¶12.) The restaurant strictly prohibits harassment or discrimination of any kind. (R. 58-5, ¶10.) Its strict "zero tolerance" policy is described in the "FOTH Handbook" and reviewed with each employee, including Anderson, at their orientation. (R. 58-5, ¶10-11.) Mott Street also has an "open door" policy, where employees can bring any concerns pertaining to harassment or discrimination to any manager or Partner without fear of retaliation. (R. 58-5, ¶11.)

---

[4] Anderson was the only person deposed in this lawsuit. Her deposition was split into two days and is cited as: (A. # [Tr. I page #:line #].) or (A. # [Tr. II page #: line #].).

### c. The Host Position

Mott Street employs 20-30 employees overall, including 2-5 hosts at any given time. (R. 58-5, ¶8, 19.) The vast majority of Mott Street's hosts have been female. (R. 58-5, ¶20.) Indeed, at the time of Anderson's separation, four of the five hosts (including Anderson) were female, and Mott Street has since hired many other female hosts to replace her. (R. 58-5, ¶19-20, 56-59.)

Typically, Mott Street schedules one host per shift, except for busy Friday and Saturday nights, where two hosts are sometimes scheduled. (R. 58-5, ¶23.) Like all hosts, Anderson was a "FOTH" employee, who reported primarily to Chung and ultimately to Kim. (R. 58-5, ¶21-22.) Anderson and other hosts also reported to one of several FOTH Managers, including Lola Olateju, and to Bar Manager Charles "Mike" Melazzo. (R. 58-5, ¶22; R. 58-9, ¶4 [Mike Melazzo's Declaration].) Hosts are considered the "face" of the restaurant and the first employee to greet a guest. (R. 58-5, ¶21.) Mott Street requires all hosts, including Anderson, to welcome guests with a warm greeting, maintain eye contact, exchange pleasantries, smile during all guest interactions, say "hello" or "goodbye" in a cheerful manner, and follow a friendly "script" when answering the phone. (R. 58-5, ¶21.) Hosts are required to follow the rules and policies in the "FOTH Handbook," abide by Chung's (or any other manager's) instructions, greet and seat guests, answer the phone, and manage reservations. (R. 58-5, ¶21.) Above all else, "[g]uest recognition and satisfaction are the primary goals" of the host position. (R. 58-5, ¶21.)

### d. The Partners Independently Observe Anderson's Rude Demeanor.

Despite reiterating the importance of being friendly to guests, Chung observed Anderson being impatient with guests or displaying a negative demeanor on many occasions. (R. 58-5, ¶25-26.) It was Chung's impression that Anderson was "short" or "cold" with guests, rather than warm and inviting. (R. 58-5, ¶26.) Chung observed Anderson repeatedly avoiding eye contact with guests, failing to smile, and failing to exchange pleasantries. (R. 58-5, ¶26.) Chung noticed that Anderson failed to follow the phone script by abruptly answering "Mott Street," instead of: "Good afternoon, Mott Street, how may I help you?" (R. 58-5, ¶26.) Chung observed Anderson being edgy or outright unpleasant with guests as well. (R. 58-5, ¶27.) In fact, Chung estimates that at least **once per month**, Anderson's negative treatment toward a guest would cause the guest to become visibly or vocally upset, and Chung had to intervene and calm the guest down. (R. 58-5, ¶26-27.) Chung did not observe other hosts act in such an unpleasant manner. (R. 58-5, ¶27-29.) Anderson did not depose Chung, and his testimony went unrebutted.

Likewise, CEO/Executive Chef Edward Kim observed Anderson display a negative demeanor toward guests. (R. 58-7, ¶7 [Edward Kim's Declaration].) Kim agreed that Anderson appeared to be "short" and "cold" with guests. (R. 58-7, ¶7.) Kim also observed Anderson avoiding eye contact, failing to smile, failing to exchange pleasantries, and failing to follow the phone script. (R. 58-7, ¶7.) Kim also observed Anderson violate policies, such as using an electronic device in front of

guests, which is strictly prohibited. (R. 58-7, ¶9.) Kim did not observe similar behavior with other hosts. (R. 58-7, ¶8.) Kim's testimony also went unrebutted.

Edward Kim's wife Jennifer and sister Victoria reported similar concerns. For example, Jennifer had dinner at Mott Street one evening, and observed that Anderson was not hospitable at the host stand, responded to questions with curt one- or two-word answers, and did not welcome Jennifer to the restaurant. (R. 58-12, ¶6 [Jennifer Kim's Declaration].) When Jennifer called Mott Street, Anderson did not follow the script when she answered the phone. (R. 58-12, ¶5.) Jennifer reported her perceptions of Anderson's negative demeanor to her husband, Edward Kim. (R. 58-12, ¶7.) Jennifer's testimony went unrebutted as well.

Victoria had similar negative experiences regarding Anderson. Victoria dined at Mott Street on three occasions between September 2016 and April 2107, and each time, Anderson treated Victoria with the same negative and short demeanor. (R. 58-11, ¶6 [Victoria Kim's Declaration].) Victoria noticed that Anderson did not smile at her or welcome her with a warm greeting. (R. 58-11, ¶6.) Victoria also observed that Anderson avoided eye contact, failed to smile, and greeted other guests with a curt "hi," instead of saying "Welcome to Mott Street." (R. 58-11, ¶5.) It was Victoria's opinion that Anderson came across as "disengaged, cold, rude, unwelcoming, pretentious, and dismissive," and she reported all this to Chung and Kim. (R. 58-11, ¶6-7; R. 58-5, ¶37.) Victoria's testimony also went unrebutted.

### e. The First Batch of Negative Social Media Reviews

It wasn't just the Partners who were taken aback by Anderson's negative demeanor. In November 2016, three guests posted critical social media reviews about Mott Street on the "Yelp" website, which stated in relevant part:[5]

> **Reviewed 11/6/2016, Yelp, Reviewed by Duyhien N. from San Mateo, CA.**: Hostess was rude and snobby. Barely acknowledged us when we came in and didn't say anything to us on the way out. I think I literally saw up her nostrils because of how far her nose was turned up. Don't go here. Wish I could've gotten a refund for the horrible experience.

> **Reviewed 11/6/2016, Yelp, Reviewed by D N. from Chicago, IL:**. . . Service: waiters are friendly. Hostess was not.

> **Reviewed on 11/13/2016, Yelp, Reviewed by Eric C. from San Antonio, TX:** . . . Instead of the host graciously placing us where she would like us, she just pointed said, "here." I have to admit it was pretty weird and we all were in shock over the brash rudeness of it all.

(R. 58-5, ¶30; 58-6, p. 64.)

Chung was "disturbed" by these social media postings because they could have a negative impact on the business as a whole. (R. 58-5, ¶15-16, 31.) Chung reviewed the host schedules and determined that Anderson was the only host working on November 6 and November 13, 2016, which were Sundays. (R. 58-5, ¶32.) Anderson admitted that comparing schedules in this manner would be a "way to get proof" of determining who the complaints were about. (A. 56 [Tr. I 58:19-24].) This correlation of the host schedules, plus Chung's own observations of similar

---

[5] It is the responsibility of the FOTH Manager or the Bar Manager to periodically check social media postings and bring negative reviews to Chung's attention. (R. 69-1, ¶ 9.)

behavior from Anderson, formed the basis of Chung's conclusion that Anderson was the "rude" host referenced by the three guests who complained. (R. 58-5, ¶32.)

### f. Melazzo's Email and Chung's Coaching Session

Like the four Partners, Bar Manager Mike Melazzo observed Anderson's "rude" and "dismissive" demeanor with guests. (R. 58-9, ¶6-8.) After the "slew" of negative reviews, on November 15, 2016, Bar Manager Mike Melazzo wrote an email to Chung and FOTH Manager Lola Olateju which stated in relevant part:

> Criticism again mentioned the host specifically . . . [W]e need to work on the host stuff ASAP. . . . Our hosts should be engaging. This is a crucial part of the job, not an optional extra. While hosting requires a lot of technical work, or spacing tables etc; you're also the first impression people have of our restaurant. Guests should be greeted with a smile and a welcome. Mott St is a loud environment, we have to make sure we are making eye contact, speaking clearly and loudly enough with guests, and using our body language as well as our words to let guests know that we are considering them. Simply gesturing at a guest with our hands is not acceptable, waving someone off, or speaking in a curt fashion is not acceptable.

(R. 58-9, ¶9-11; 58-10, p. 6-8.)

Chung agreed with the content of Melazzo's email. (R. 58-5, ¶33-34.) Shortly thereafter, Chung and Melazzo held a coaching session with all hosts, including Anderson, to reiterate the importance of friendly customer service and reviewed each point in Melazzo's email. (R. 58-5, ¶35; R. 58-9, ¶11-12.)

### g. The Second Batch of Negative Social Media Reviews

Despite the coaching session, Anderson's demeanor did not improve—in fact, it got worse over time. (R. 58-5, ¶36; R. 58-9, ¶13.) Anderson continued to avoid eye

contact, was short, and failed to smile. (R. 58-5, ¶36.) Anderson maintained during her deposition that she was "never rude"—only "smart" and "very sarcastic," which is really just semantics. (A. 54, 58 [Tr. I 53:3-23; 66:3-13].)

In spring/summer of 2017, Mott Street received a *second* batch of negative social media reviews about the "rude" host, which stated in relevant part:

> **Reviewed 4/12/2017, Visited 4/9/2017, OpenTable, Reviewed by Anonymous:** Went in for Sunday brunch. Great food, decent server, the hostess was terrible. Waited for 35 minutes passed [sic] our reservation time to be sat at a table seated for 5 (we were a party of 6) inside when we requested to be sat outside. She was rude, frazzled, and there were two 6-tops open outside and her explanation was "we are not seating those tables today."

> **Reviewed 4/24/2017, Visited 4/23/2017, OpenTable, Reviewed by Lauren:** . . . I decided to give it another try with friends over brunch. Immediately, I found the hostess to be rude. I had a reservation for 4 people at 11:15am, and had made it a week before. When I noticed the outdoor patio had quite a bit of vacancy, she told me there would still be a 30 minute wait, but there was no one waiting anywhere for the patio, which I found odd. She refused to make eye contact when we tried to approach her about sitting outside. She was very unfriendly, and when she noticed that our 4th person was a baby (in previous situations, I have had to note a child as a guest since they're taking up a seat), she made a snarky comment about that only applying to people ordering from the menu. While the food was good, twice now I have found the service to be less than impressive, which is a bummer because the food is really good. Not sure I'll go back.

> **Reviewed 6/27/2017, Yelp, Reviewed by Arsalan:** . . . Hostess was rude and not accommodating. We had a reservation and were 10 minutes late due to traffic and ended up being seated at the bar while there were empty tables behind us.

> **Reviewed 8/12/2017, Yelp, Reviewed by Nika L,:** I love this restaurant but whoever answered the phone today (hostess probably) was incredibly impatient and rude. When a guest calls to see if there's a table available it's rude to cut them off on the phone and not try and help to figure out how long a wait time is.

(R. 58-5, ¶38; R. 58-6, p. 64-65.) As before, Chung was disturbed by these reviews and matched the schedules to determine they were about Anderson. (R. 58-5, ¶39.)

### h. Anderson's Insubordination

As if that wasn't enough, throughout this time, Anderson outright defied Chung's instructions on multiple occasions. (R. 58-5, ¶40.) First, despite repeated reminders, Anderson refused to properly enter her work availability and scheduling preferences into Mott Street's scheduling program. (R. 58-5, ¶40.) Second, Anderson repeatedly stored her bag and other personal belongings near the host stand where they were in plain view of guests and cumbersome to get around. (R. 58-5, ¶43.) Then, in early/mid-August 2017, Chung observed Anderson using an electronic device for personal reasons in plain view of guests, which is not permitted. (R. 58-5, ¶41.) In fact, this is considered a very serious policy violation because it is frustrating to guests, and Chung counseled Anderson on complying with the policy. (R. 58-5, ¶41-42.) A couple weeks later, on August 26, 2017, Chung observed Anderson again using an iPad in front of guests, and Chung instructed Anderson to clock out and go home. (R. 58-5, ¶42; A-58, [Tr. I 69:7-19].) Chung considered the above conduct to be very serious acts of "insubordination." (R. 58-5, ¶40-43.)

### i. The August 26, 2017 Email

Shortly after Chung sent Anderson home for insubordination on August 26, 2017, Anderson sent Lola Olateju a "Confidential" email (the "August 26th Email"). (A. 200-01.) In the lengthy email, Anderson reported several concerns that she had about her schedule and complained about being "disrespected" and sent home by Chung that day. (A. 200-01.) Significantly, the August 26th Email does **not** report harassment or discrimination, which Anderson **admitted** during her deposition. (A-59 [Tr. I 70:6-18].) Also of significance, Anderson did not copy Chung or Kim on the August 26th Email, who each testified that they were not aware of the email at the time of Anderson's termination about a month later. (R. 58-5, ¶51; R. 58-7, ¶15.)[6]

### j. The Final Negative Social Media Review

Throughout the end of August and into September 2017, Anderson admitted that she and Chung were not seeing "eye to eye." (A. 177 [Tr. II 224:15-21].) At approximately the same time, Olateju recommended to Chung that Anderson be terminated because she had essentially become unmanageable. (R. 58-5, ¶45.)[7] Then, on September 20, 2017, Olateju forwarded Chung an email with the subject

---

[6] Anderson asserts that Chung *should* have known about the August 26th Email, because Olateju eventually copied Chung on a reply to Anderson. However, there is no evidence that Chung actually read the email thread (he did not). Anderson's assertion that Chung read the August 26th Email and "started acting more passive-aggressive" is pure speculation and not even supported by the record. (*See* A. 35, ¶39, citing to R. 62-4.)

[7] Mott Street properly offered Olateju's statement for the non-hearsay purpose of its effect on the listener (Chung), because Chung relied on Olateju's statement when he decided to terminate Anderson. *See Afridi v. BNSF Ry. Co.*, No. 18-CV-8205, 2022 U.S. Dist. LEXIS 200019, at *12 n. 2-3 (N.D. Ill. Nov. 3, 2022)*; citing Torry v. City of Chi.*, 932 F.3d 579, 585 (7th Cir. 2019).

"hmmm case in point re: host." (R. 58-5, ¶46; R. 58-6, p. 71-72.) Olateju's email

contained yet another negative social media review about the "grumpy hostess:"

> **Phoebe Taylor reviewed Mott St Chicago – August 24 at 1:15 pm**
> I honestly think the grumpy hostesses would have ruined my night if it were not for the incredible food and the incredible service we received once we (finally sat down). . . . Except for the shit-show that was the hostess station. I understand that that is a stressful job – ive worked in fine dining for years. But holy shit, you're the first point of contact for a customer and cant 1. Smile 2. Remember my name WHEN ITS LISTED ON A RESERVATION. I know it's a weird name, but I was asked 5 different times who I was by the same hostess, sat 10 minutes lat [sic] to a reservation. We traveled from Toronto to eat at Mott st and id go again and recommend it anyone and everyone. The food id call it genius, I think the best cocktails I've ever had. But someone tighten up the screws at the hostess booth and give them a lesson on customer service.

(R. 58-5, ¶46; R. 58-6, p. 71-72.)

As before, Chung compared schedules and concluded that Anderson was

working as the host during the time at issue. (R. 58-5, ¶47.)

### k. Anderson's Termination

Enough was enough. At that point, Chung decided to terminate Anderson's

employment. (R. 58-5, ¶48.) In making his decision, Chung relied on (1) his own

observations of Anderson's rude behavior, (2) the **eight** negative social media

reviews, (3) Anderson's repeated insubordinate conduct, (4) Olateju's recommend-

ation that Anderson be terminated, and (5) Victoria Kim's report of Anderson's rude

demeanor toward her. (R. 58-5, ¶ 48.)

Chung discussed his decision with Edward Kim to see if he had any objections. (R. 58-5, ¶49.) He did not. Kim agreed that Anderson should be terminated based on (1) his own interactions and observations regarding Anderson, (2) Chung's recommendation to terminate Anderson, (3) the negative guest reviews, and (4) his wife's reports of Anderson's negative demeanor. (R. 58-7, ¶14.) Two days later, on September 22, 2017, at approximately 3:00 p.m., Chung informed Anderson that her employment was terminated. (R. 58-5, ¶50.)[8]

Several days ***after*** Anderson's termination, Olateju acknowledged receipt of a second "Confidential" email from Anderson (the "September 22nd Email"). (A. 202-03.) In the September 22nd Email, which Anderson sent at 3:57 p.m., Anderson reported several additional concerns and stated: "Discriminated by gender and sexually harassed by men at Mott St whether it be coworkers or guests with no protection [sic]." (R. 202-03.) Chung and Kim testified they did not know anything about either email or any other report of "harassment" or "discrimination" when they made the decision to terminate Anderson. (R. 58-5, ¶52; 58-7, ¶16.)[9]

---

[8] Anderson argues that there exists an issue of fact as to the exact time of her termination—suggesting that she was terminated closer to 5:00 p.m. when Mott Street employees met for what is colloquially referred to as "family meal." However, during her deposition testimony, she repeatedly stated she did not remember what time she was terminated. (A. 64-65 [Tr. I 92:21-95:4].) In the end, the exact time of Anderson's termination is not a material fact for reasons discussed *infra*.

[9] On summary judgment, Anderson—without any context, foundation, or authentication—submitted random computer screenshots purporting to be social media reviews criticizing Mott Street's hosts from 2015—2022. (*See generally* R. 63-5.) These are unhelpful to Anderson for several reasons. First, they are unauthenticated and cannot be considered on summary judgment. *See Woods v. City of Chi.*, 234 F.3d 979, 989 (7th Cir. 2000) ("unauthenticated documents generally cannot be considered on a motion for summary judgment"). Second, she failed to submit these reviews in a statement of additional facts in violation of N.D. L.R. 56.1 (e)(2) and (b)(3). Third, neither Chung nor Kim knew anything

## II.    Mott Street's Comparators and Subsequent Hires

To replace Anderson, Chung hired Claire Wong, a female, as a host.[10] (R. 58-5, ¶56.) In the year that followed, Mott Street hired a total ten hosts, and only one of the hosts was male. (R. 58-5, ¶57.) Mott Street also has a strong female presence in other roles. Indeed, two of the four Partners are female, as was the head chef (*Chef de Cuisine*) during Anderson's employment, and the new head chef is female as well. (R. 58-5, ¶58.) In June 2016, Chung also selected host Lola Olateju—Anderson's peer and coworker—to become a manager in training, eventually promoting Olateju to a FOTH Manager in April 2017. (R. 58-5, ¶59.)

Mott Street has terminated other male FOTH employees for reasons similar to Anderson. The restaurant terminated Jonathan Tribbey, a barback, in 2020 for having a negative demeanor and being combative with coworkers. (R. 58-5, ¶61.) Mott Street terminated server Eric Blass in 2022 for being insubordinate. (R. 58-5, ¶61.) Garrett Douthitt, a server, was terminated in 2018 for numerous policy violations related to cash handling. (R. 58-5, ¶61.) None of these male employees

---

about these additional social media reviews because no manager brought them to their attention. (R. 69-1, ¶9-12; R. 69-2, ¶4-5.) *See Gaines v. K-Five Constr. Corp.*, 742 F.3d 256, 263 (7th Cir. 2014) (plaintiff must present evidence that supervisor knew of comparator's poor performance). Fourth, approximately *nine* of these negative reviews occurred during Anderson's employment and may very well have been about her (chances are they were). Fifth, if the other hosts in the additional social media reviews were female (and chances are they were), this would not prove gender discrimination anyway. Finally, Anderson received eight negative social media reviews before she was terminated, and there is nothing to suggest that any other host received as many negative reviews as Anderson did. In the end, none of it matters anyway because Anderson does not even mention these additional social media reviews in her Appellate Brief and so the issue is ultimately waived. *See Griffin v. Teamcare*, 909 F.3d 842, 846 (7th Cir. 2018) (failing to develop argument on appeal results in any argument being waived).

[10] Chung subsequently became aware that Wong identified as nonbinary. (R. 58-5, ¶56.)

ever reported any form of harassment or discrimination. (R. 58-5, ¶61.) All three of these workers were FOTH employees, subject to the same general standards as Anderson, and ultimately reported to Nate Chung and Edward Kim. (R. 58-5, ¶61; R. 58-7, ¶ 6.) Anderson did not challenge any of these comparators. (A. 39, ¶67-68.)

## III.  Anderson's Claims at issue in this Appeal

### a. *Anderson's Sexual Harassment Claim*

During her depositions, Anderson was asked to testify as to the complete basis of her sexual harassment claim. (A. 67-70 [Tr. I 103:4-117:10]; A. 90-100 [Tr. II 137:17-147:3].) Other than vague, generalized, and conclusory assertions, Anderson identified five specific instances of conduct purportedly occurring over the course of her two years of employment:

First, Anderson testified that at some point in late 2016 or early 2017, a coworker named Gabe Freeman "touched [her] behind" and that "it was the time that he touched [my behind] that bothered me." (A. 67-68, [Tr. 104:12-107:20].) Anderson acknowledged that she did not have any other issues with Freeman and "he quit soon after." (A. 68 [Tr. 107:10-12].)

Second, Anderson asserted that a server named Simon DuFour "bickered" with her. (A. 69 [Tr. I 110:7-112:12]; A. 92 [Tr. II 139:7-17].) When asked to explain what she meant by "bickering," Anderson eventually stated: "he [DuFour] would just say nasty stuff. He just played a lot." (A. 69 [Tr. I 111:11-16].) Anderson further testified that DuFour said that she had a "nice body" or "nice butt" and confirmed he "just played a lot." (A.69 [Tr. I 111:22-112:7].)

16

<u>Third</u>, Anderson alleged that a customer (not an employee) touched her buttocks on one occasion at some point in approximately August/September 2017. (A. 68 [Tr. I 108:8-109:5]; A. 91 [Tr. II 138:10-24].)[11] This was the *only* issue that Anderson claims she brought to the Partners' attention. (A. 70 [Tr. I 114:22-115:16.]

<u>Fourth</u>, Anderson alleged that Mike Melazzo called her a "bitch" on one occasion. (A. 94, 97-98 [Tr. II 141:11-17; 144:22-145:2].)

<u>Fifth</u>, Anderson testified that Chung "told [her] that [she] shouldn't wear loose clothing" and that she "looked better in form-fitting clothing." (A. 98-99 [Tr. II 145:16-146:9].) Anderson conceded that she wore the same clothing to work at Mott Street as she wore at another job at a law firm. (A. 99 [Tr. II 146:10-18].)[12]

### b. *Anderson's Sex Discrimination Claim*

Other than evasiveness and generalized assertions, such as "women quit," Anderson stated that she was treated differently than Simon DuFour, a male server, who showed late to work on numerous occasions, and was not "written up" or terminated for tardiness. (A. 72; 70-71; 100-01 [Tr. I 125:1-9; 117:23-118:19; Tr. II 147:4-148:13].) Well, neither was Anderson. (A. 100; 101 [Tr. II 147:4-10; 148:14-149:6].) When asked whether she knew of any male employees who had a similar "track record" as hers and were not terminated, Anderson admitted that she did

---

[11] In her Appellate Brief, Anderson asserts that "a patron grabbed her breasts" (p. 18). This is merely an unsupported allegation in her *Complaint* and not supported by her deposition testimony.

[12] Also in her Appellate Brief, Anderson makes references to being "raped" by an Uber driver, which is a red herring and used only for its shock value. To be clear, Anderson testified that she was in no way attributing the alleged rape to anything that Mott Street had done. (A. 166-67 [Tr. II 213:22-214:16]: "Don't get me wrong, I'm not blaming [Mott Street] for the rape.") Anderson also testified that she did not know whether Nate Chung or any of the Partners even knew about the incident. (A. 182 [Tr. II 229:21-23].)

not. (A. 73 [Tr. 126:1-13].) Anderson maintained that she was terminated "for no reason." (A. 175-76 [Tr. II 222:10-223:18].)

### c. Anderson's Retaliation Claim

Anderson's retaliation case is seemingly premised on the two emails she sent to Olateju in August/September 2017. However, her testimony is as follows:

> Q.     . . . Do you believe Exhibit 6 [the September 22nd Email] was sent before or after you were terminated?
>
> A.     I don't remember.
>
> Q.     You don't remember. Okay. Do you believe that this email [the September 22nd Email] had anything to do with your termination?
>
> A.     **No.**
>
> . . .
>
> A.     . . . **I think I was terminated in retaliation from the previous e-mail [the August 26th Email].**

(A. 62 [Tr. I 83:1-18 emphasis added]; referencing R. 58-4, p. 74 [Pl. Dep. Ex. 6] and R. 58-4, p. 72-73 [Pl. Dep. Ex. 5].)

In her Response to Mott Street's Local Rule 56.1 Statement of Facts, Anderson did not specifically dispute the fact that the September 22nd Email had nothing to do with her termination, and only disputed that her "complaints in general resulted in the retaliation." (*Compare* A. 29, ¶64 and A. 38, ¶64.)[13] Anderson

---

[13] Whether intentional or not, Anderson somehow removed the time stamp in one version of the September 22nd Email and then used the altered version in an effort to leverage her retaliation claim early in the proceedings. (*Compare* R. 58-4, p. 74 and 58-4, p. 78.)

also admitted that the only fact to support her retaliation claim was "the time frame." (A. 114 [Tr. 161:13-23].)

Based on these shortcomings, the District Count granted summary judgment in Mott Street's favor on all counts. (A. 204-29.) This appeal followed.

## SUMMARY OF ARGUMENT

Anderson's appeal is entirely baseless. In fact, it's not even clear what "error" she is appealing—it's really just a "re-do" of her summary judgment brief. Indeed, Anderson failed to present many—if not most—of the arguments in her appeal to the District Court, which means they have all been waived. *See Allen v. City of Chi.*, 865 F.3d 936, 943 (7th Cir. 2017).

The thrust of Anderson's appeal seems to be her misguided belief that simply "denying" material facts—without any evidentiary support—is enough to survive summary judgment. It's not. *See King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017) ("Summary judgment is not a time to be coy" and conclusory statements without factual support are insufficient to "stave off summary judgment."). What Anderson relies on is not evidence at all. She plays very loose with the record: repeatedly misstating her testimony, making things up, and citing irrelevant portions of the record. She also relies on her speculations and the allegations in her Complaint, which again is not evidence.

In the end, Anderson's claims fall well short of being actionable. The vague, non-serious, infrequent, and isolated conduct that serves as the basis of her sexual harassment claim is not "severe or pervasive" as a pure matter of law.

Regarding her termination: Mott Street has shown that its decisionmakers (Nate Chung and Edward Kim) honestly believed that Anderson was rude to guests, insubordinate, and that she received ***eight*** negative social media reviews in a short period. She was terminated for these legitimate non-discriminatory and non-retaliatory reasons. To dispute this, Anderson relies primarily on her own perceptions of her own performance, which simply does not matter on summary judgment. *See Lauth v. Covance, Inc.,* 863 F.3d 708, 715-16 (7th Cir. 2017).

Moreover, there is no evidence to suggest that Anderson was fired because she is a woman. No male employee who engaged in similar conduct was treated more favorably. Mott Street has undisputedly shown this. Nor is there any other evidence of "pretext," particularly considering that Anderson was terminated by the same individual who hired her and was replaced by a woman in a position dominated by women in 50% woman-owned company with many female managers.

Likewise, there is no evidence of "retaliation." For starters, Anderson never engaged in any legally "protected activity" prior to her termination. Even if she did, it is undisputed that the decisionmakers did not know about it at the time of Anderson's termination, making it literally impossible to retaliate. Even then, Anderson presents no inference of any sort of retaliatory *animus.*

This is a straightforward and simple case. Anderson's appeal is a re-do of her failed efforts to oppose Mott Street's summary judgment motion with more true-to form misdirected and unsupported assertions. There is absolutely nothing to disturb Judge Durkin's well-reasoned opinion and summary judgment must be affirmed.

## ARGUMENT

## I.    The District Court did not abuse its discretion regarding Anderson's failure to comply with L.R 56.1.

### a.   Standard of Review

The District Court determined that—while "ultimately, it does not matter"—Anderson failed to comply with the requirements of N.D. Ill. Local Rule 56.1. (A. 205-06.) A district court's decision regarding compliance with L.R. 56.1 is reviewed only for an abuse of discretion. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015). The Seventh Circuit has "routinely upheld the district court's discretion in requiring parties to comply strictly with local rule requirements." *Id.*

### b.   Requirements of L.R. 56.1

L.R. 56.1 requires a party moving for summary judgment to submit a "Statement of Material Facts" ("SOF") consisting of "concise numbered paragraphs" with "citation to the specific evidentiary material" supporting each fact. L.R. 56.1(a)(2) and (d). The non-movant must submit a "response" to each numbered paragraph, which "must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact." L.R. 56.1(b)(2) and (e)(2).

In the event of a denial, the non-movant "must cite *specific* evidentiary material that controverts the fact;" otherwise, the asserted fact may be deemed admitted. *See* L.R. 56.1(e)(3) (emphasis added); *Curtis*, 807 F.3d at 218. New facts belong in a Statement of Additional Facts ("SOAF") and may be disregarded if brought up in the response instead. *See* L.R. 56.1(b)(3); *see also Cichon v. Exelon Generation Co., LLC*, 401 F.3d 803, 810 (7th Cir. 2005) (no abuse of discretion when

district court ignored additional facts not set forth in a SOAF). Strict compliance with L.R. 56.1 "ensures the facts material to issues in the case and the evidence supporting such facts are clearly organized and presented for the court's summary judgment determination." *Curtis*, 807 F.3d at 219.

### c. Anderson clearly failed to comply with L.R. 56.1.

The District Court simply admonished Anderson for her "serious violations" of L.R. 56.1, stating that it "*should*" disregard her additional and unsupported facts. But throughout its opinion, the District Court actually considered all of Anderson's "facts" anyway, making it entirely unclear what Anderson is even appealing. In fact, the District Court would have been well within its discretion to ignore all of Anderson's "facts" and "denials," since she violated L.R. 56.1 at nearly every turn.[14] A few of her more flagrant violations are as follows:

- In many of her denials, Anderson actually testified that she **did not remember** an event (*e.g.* A. 32, ¶14, could not remember if Melazzo counselled her; A. 35, ¶36 "did not remember the iPad situation"; A. 36, ¶47 could not remember when she was terminated), which is not enough to create an issue of fact "in the face of affirmative evidence of the fact." *See Boykin v. Chess*, No. 16 CV 50161, 2020 U.S. Dist. LEXIS 12731, at *7 (N.D. Ill. Jan. 27, 2020).

- In other denials and throughout her summary judgment brief, she inappropriately cited to her own Complaint (*e.g.* A. 37, ¶51 and A. 38, ¶60 citing to Complaint to bolster sexual harassment and retaliation claims). *See Tibbs v. City of Chi.*, 469 F.3d 661, 663 n.2 (7th Cir. 2006) (when opposing summary judgment "mere allegations of a complaint are not evidence").

---

[14] It is not even clear which SOF Paragraphs are at issue in this appeal—they keep changing throughout Anderson's Appellate Brief. (*Compare* Paragraph numbers in Appellant's Brief located on pages 7-12 with page 13 with page 31 and with pages 32-35.)

- She also misstates the record altogether. (*E.g.* A. 35, ¶33 denying that she failed to enter scheduling preferences correctly, but citing to testimony, stating "my schedule was different from everybody else's;" A. 35, ¶42 putting words into Olateju's mouth; A. 37, ¶57 offering vague assertions like "women were not treated right," which appears nowhere in the testimony).

- Other "evidence" she presents is nothing more than speculation or conjecture, which is not considered on summary judgment. (*E.g.* A. 33-36, ¶16-22, 26, 30, 37, 44, 45, 46, 48 speculating that if she was "rude," then she "would have received a write-up," or "she would not have gotten a promotion," or Olateju "would have said something to her;" A. 36, ¶49 speculating that Chung was aware of the August 26th Email).

- Anderson offered nothing more than hearsay in A. 35, ¶42 and A. 38, ¶62 (Olateju told her that "Nate picked on you" to support discrimination and retaliation claim). *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment.").

Plainly, the District Court did not abuse its discretion in reproaching Anderson, and her wild assertions and speculations do not create issues of fact.

## II. Anderson was not subject to actionable "sexual harassment."

### a. *Summary Judgment Standard and Standard of Review*

Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005). It must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). To survive summary judgment, the non-movant must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A district court's grant of summary judgment is reviewed *de novo. Swyear v. Fare*

*Foods Corp.*, 911 F.3d 874, 880 (7th Cir. 2018). The Appellate Court can affirm a district court's decision "on any ground supported by the record." *St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003, 1008 (7th Cir. 2019).

### b. Anderson's "sexual harassment" arguments have been waived.

On summary judgment, Anderson devoted literally a ***single paragraph*** to defend her sexual harassment claim. (R. 63, p 5-6; A. 215.) She failed to distinguish any of the numerous cases cited by Mott Street or cite to any authority of her own. All her arguments on appeal are brand new, which is impermissible, since it is well settled that arguments raised for the first time on appeal are waived. *See Kensington Rock Island Ltd. P'ship v. Am. Eagle Historic Partners*, 921 F.2d 122, 125 (7th Cir. 1990) ("A party who prevails in court should receive relief -- not further litigation in which the opposing side presents new arguments that were available from the start."). This Court can affirm on this basis alone.

### c. The "high bar" to establish actionable sexual harassment.

Waiver aside, Anderson's sexual harassment claim is simply not actionable. In the Seventh Circuit, plaintiffs alleging "sexual harassment" under Title VII face a "high bar." *Swyear*, 911 F.3d at 881 (no actionable harassment despite a workplace permeated with sexual nicknames and comments, and a coworker who crawled into plaintiff's hotel bed against her will). This is because "Title VII is not a general code of workplace civility." *See McKenzie v. Milwaukee Cty.*, 381 F.3d 619, 624 (7th Cir. 2004). To survive summary judgment, Anderson must show, among other things, that the conduct she endured was "both subjectively and objectively so

severe or pervasive as to alter the conditions of her employment and create an abusive working environment." *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 645 (7th Cir. 2005) ("relatively isolated instances of non-severe misconduct will not support a claim of a hostile environment"). Merely "boorish or offensive stray remarks" or even isolated touching does not satisfy the "severe or pervasive" standard. *Mercer v. Cook Cty.*, 527 F. App'x 515, 521 (7th Cir. 2013) (eight incidents of offensive conduct, including being called a "bitch" and being bumped into was not actionable).

In order for a district court to analyze the severity or pervasiveness of the conduct and thus determine whether Anderson has carried her burden on an essential element, Anderson must come forward with ***specific facts*** supporting her claim; vague non-specific testimony will not do. *See Gabrielle M. v. Park Forest-Chicago Heights*, 315 F.3d 817, 822 (7th Cir. 2003) (in a Title IX sexual harassment case: a plaintiff must "present details of when, where, or how often this alleged conduct occurred and whether it was reported"); *Brooks v. Avancez*, 39 F.4th 424, 442 (7th Cir. 2022) (vague and generalized testimony of being "regularly" and "routinely" harassed did not survive summary judgment); *Taylor v. Exxon Mobil Corp.,* No. 07 C 3172, 2009 U.S. Dist. LEXIS 13988, at *17 (N.D. Ill. Feb. 24, 2009) (in a racial harassment case, "vague and non-specific allegations of 'racist' comments" did not survive summary judgment).

### d. Anderson's evidence falls well short of being "severe or pervasive."

100% of the evidence supporting Anderson's harassment claim comes from her own testimony, which was vague and generalized. Despite the rhetoric

otherwise, Anderson essentially concedes in her Appellate Brief that her harassment claim is comprised of **four or five** isolated and infrequent instances of objectionable conduct over a two-year period: (1) a coworker named Gabe Freeman touched her on the buttocks one time and then quit, which is isolated since the conduct could not be replicated; (2) another employee called her a "bitch," which is not serious or even "sexual harassment;" (3) she "bickered" (whatever that means) with another coworker, which is vague and not serious; (4) Chung made a single unclear remark about "form fitting" clothing, which is isolated, vague, and not serious either; and (5) some random guest touched her at some unspecified time, for which Mott Street cannot even be liable. *See EEOC v. Costco Wholesale Corp.*, 903 F.3d 618, 627 (7th Cir. 2018) ("It bears emphasis that an employer is not vicariously liable for the sexual harassment of its employee by a customer.").

As a pure matter of law, the isolated, sporadic, and non-serious nature of the alleged conduct over a *two-year* period, even taken as completely true, falls well short of the "high bar" demanded in this Circuit, and this Court has affirmed the dismissal of harassment claims with analogous and even far worse facts. S*ee e.g. Adusumilli v. City of Chi.*, 164 F.3d 353, 361 (7th Cir. 1998) (affirming summary judgment in favor of employer despite plaintiff being subjected to comments about bananas, rubber bands, and low-neck tops, leering, and "four isolated incidents in which a co-worker briefly touched her arm, fingers, or buttocks"); *Swyear*, 911 F.3d at 882 ("Even more intimate or more crude physical acts—a hand on the thigh, a

kiss on the lips, a pinch of the buttocks—may be considered insufficiently abusive to be described as 'severe' when they occur in isolation.").[15]

Not only that, but Anderson never asserted, during her employment or afterward, that the "harassment" she allegedly experienced impacted her ability to do her job, which further confirms that it did not alter the conditions of her employment. Again, she maintained she was terminated for "no reason." *See Briggs v. SMG Food & Bev., L.L.C.*, No. 20 C 1733, 2022 U.S. Dist. LEXIS 131391, at \*12 (N.D. Ill. July 25, 2022) (granting summary judgment partiality because the plaintiff "[made] no argument that the [harassing] comments impacted his ability to do his job") *citing Smith v. Illinois Dep't of Trans.*, 936 F.3d 554, 561 (7th Cir. 2019) (affirming summary judgment where plaintiff was called a racial slur but presented no evidence as to how it impacted him); *see also Swyear*, 911 F.3d at 882-83

---

[15] The list goes on: *See Weiss v. Coca–Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir. 1993) (no actionable harassment despite plaintiff being asked for dates, called a dumb blond, touched several times, had "I love you" signs placed in her work area, and coworker attempting to kiss her on multiple occasions); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995) (reversing verdict in favor of plaintiff where coworker called plaintiff a "pretty girl," made grunting noises as she left his office, said his office got "hot" when she stepped in, stated "all pretty girls [should] run around naked" in the office, likened her to his "Anita Hill," and made gestures to her suggesting masturbation); *see also Hilt Dyson v. City of Chicago*, 282 F.3d 456, 463-64 (7th Cir. 2002) (rubbing plaintiff's back, squeezing her shoulders, and staring at her chest during uniform inspection was insufficient to create a hostile work environment); *Koelsch v. Beltone Elecs. Corp.*, 46 F.3d 705, 706 (7th Cir. 1995) (no harassment despite president of company rubbing plaintiff's leg with his foot and grabbing plaintiff's buttocks over several year period); *see also* District Court opinions: *Hubbard v. M & K Truck Ctrs.*, No. 18 C 8343, 2020 U.S. Dist. LEXIS 222535, at \*11 (N.D. Ill. Nov. 30, 2020) (no actionable harassment despite supervisor making approximately ten harassing comments over a one-year period, including calling plaintiff a 'blonde bitch' and asking her 'to try on a team shirt to see if it fit.'"); *Williams v. Univ. of Chi. Med. Ctr.*, No. 11 C 9015, 2014 U.S. Dist. LEXIS 133193, at \*25 (N.D. Ill. Sep. 23, 2014) (no actionable harassment despite six instances of objectionable conduct, including supervisor who "bumped" plaintiff's thigh).

(employee failed to show how "harassment" interfered in her ability to do her job when she testified that other impediments impacted her performance).

The three cases cited by Anderson—again, for the first time on appeal—are easily distinguishable because they each dealt with very serious and egregious sexual touching, if not outright sexual assault, which is so very different than what we have here. In *Worth*, an employee stated a harassment claim after the **owner** of the company made a number of blatant sexual advances that cumulated in him stroking the employee's face and hair, then "[sticking] his hand down her dress and [placing] it directly onto her breast" and keeping his hand "approximately one inch away from her nipple" for "several seconds" and then "[stroking] her back side and leg." *Worth v. Tyer*, 276 F.3d 249, 257 (7th Cir. 2001). Likewise, in *Jarvis*, a District Court opinion, the Court found that "repeated nonconsensual physical contact," including multiple instances of touching the plaintiff's breast, paired with other "explicit sexual solicitations" from other coworkers, was serious enough to be actionable. *Jarvis v. Sigmatron Int'l Inc.*, 223 F. Supp. 2d 981, 986 (N.D. Ill. 2002). In *Kampmier*, a coworker grabbed the plaintiff's buttocks *thirty* times, hugged her fifty—sixty times, made twelve explicit sexual remarks, and jumped in plaintiff's lap ten times. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 934 (7th Cir. 2007).

None of the conduct described in the three cases Anderson now cites (for the first time on appeal) is remotely analogous to her own allegations. In other words, these cases compared to Anderson's case are simply "apples and oranges," and indeed only underscore just how very serious the conduct must be to survive

28

summary judgment. Even if her arguments were not waived, the District Court plainly did not err in granting summary judgment on Anderson's harassment claim.

## III.    Anderson was not subject to sex discrimination.

### a. Anderson's "sex discrimination" claim is just a regurgitation of her "sexual harassment" claim.

Anderson essentially concedes—and even argues—that her sex discrimination claim rises and falls with her sexual harassment claim, which is reason enough for affirming its dismissal. *See Bell v. City of Chi.*, No. 03 C 2117, 2004 U.S. Dist. LEXIS 25889, at \*42 (N.D. Ill. Dec. 17, 2004) (sexual harassment claim "dressed up" as a separate "sex discrimination claim" was insufficient); *see also Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000) (harassment and discrimination are separate wrongs with separate elements).

### b. Legal Standard

To the extent Anderson brings a recognizable sex discrimination claim under Title VII, the standard on summary judgment is "simply whether the evidence [considered as a whole] would permit a reasonable factfinder to conclude that the plaintiff's [sex] caused the discharge." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). To satisfy this standard, Anderson relies exclusively on the "*McDonnell Douglas*" burden-shifting framework, where it is her burden to establish a *prima facie* case by showing that: (1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated male employees were treated more favorably. *See e.g. McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). If she

29

succeeds, the burden then shifts to Mott Street to "articulate a legitimate, nondiscriminatory reason" for the discharge, at which point the burden shifts back to Anderson to submit evidence that the proffered reason is "pretextual"—that is, a "lie" or a "phony reason" for the discharge. *See Smith v. Chi. Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015).

### c. Anderson was treated no differently than male coworkers.

Anderson failed to present a single similarly situated male employee who was treated more favorably (a "comparator"), which means her claim fails. To establish an adequate comparator, Anderson must identify a male employee who "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *See Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012); *see also Hanners v. Trent*, 674 F.3d 683, 692 (7th Cir. 2012) (speculation others were treated more favorably was insufficient to avoid summary judgment, and plaintiff must demonstrate that specific comparators "engaged in similar conduct" and specifically identify the conduct).

Here, Anderson only points to server Simon DuFour as a potential comparator. The problem is that DuFour and Anderson did not engage in similar conduct, which means DuFour is not "similarly situated" to Anderson. According to Anderson, DuFour was late and never written up, and she mentions that some other unknown male workers drank on the job without punishment. But Anderson was never punished for being late or drinking, and it is undisputed that she was never written up for anything either. In fact, when asked about comparators,

Anderson admitted that she did not know anyone who had a "track record" like hers. (A. 73 [Tr. I 126:1-13].) It was Anderson's burden to identify a male employee who was similarly rude and insubordinate, which she failed to do. *See Abebe v. Health & Hosp. Corp. of Marion Cty.*, 35 F.4th 601, 607 (7th Cir. 2022) (employee's burden to identify a comparator who was "similarly disrespectful or aggressive in communicating with their colleagues").

Anderson also argues—for the first time on appeal—that "customers complained about [DuFour], but he was never reprimanded or terminated by management." (Brief p. 23.) The record does not support this. Anderson only testified that guests complained to **_her_** about DuFour at the host stand—and not to management. (A. 47 [Tr. I 23:5-23].) Unless Anderson can show that Chung or another member of management knew about DuFour's conduct—which she hasn't— then DuFour is not a comparator. *See Gaines v. K-Five Constr. Corp.*, 742 F.3d 256, 263 (7th Cir. 2014) (plaintiff must present evidence that supervisor knew of comparator's poor performance, and "[w]ithout that evidence, [Plaintiff] cannot defeat summary judgment"). Plus, at the same section of her deposition transcript, Anderson conceded that guests complained to her about another female server named "Kristen" who was not disciplined either, which neutralizes any inference that Mott Street treated women more harshly. (A. 47 [Tr. I 24:16-25:24].)

On the other hand, Mott Street presented three comparators of its own: the restaurant terminated the following male FOTH employees who reported to Chung and Kim: (1) barback Jonathan Tribbey for having a negative demeanor and being

combative with coworkers; (2) server Eric Blass for being insubordinate; and (3) server Garrett Douthitt for numerous policy violations—just like Anderson. *See e.g. Treadwell v. Office of the Ill. Sec. of State,* 455 F.3d 778, 782 (7th Cir. 2006) (retaliation claim failed when employer showed that employees were treated equally).

### d. Anderson failed to meet expectations, and Mott Street's reasons for her termination were not pretextual.

Where, as is the case here, an employer offers a non-discriminatory reason for an employee's termination, the element of "meeting expectations" can merge with the issue of pretext. *Brooks*, 39 F.4th at 435. If Anderson cannot prove pretext, then she cannot show that she was meeting expectations. *See Fredericks v. Adventist La Grange Mem'l Hosp.*, 580 F. App'x 477, 478-79 (7th Cir. 2014). Since Mott Street terminated Anderson for being rude, insubordinate, and for having eight guest complaints, she must show that all ***three*** of these reasons were pretextual. *See Ghosh v. Ind. Dep't of Envtl. Mgmt.,* 192 F.3d 1087, 1091-92 (7th Cir. 1999).

When assessing pretext, the Court does not "second-guess an employer's facially legitimate business decisions." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 564 (7th Cir. 2016). If Chung and Kim, the decisionmakers, "honestly believed" their reasons to discharge Anderson were legitimate—even if their reasons were "wrong" or "trivial" or even if they were "too hard" on Anderson—her discrimination claim fails. *See Coleman*, 667 F.3d at 852.

To establish that Mott Street was "lying" about its reasons for terminating her, Anderson only offers her own perceptions of her own performance. But it is

black letter law that an employee's self-assessment of their own performance is **immaterial** for purposes of summary judgment. *Lauth,* 863 F.3d at 715-16 ("[Plaintiff's] belief that he was performing his job adequately is not relevant[.]"); *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) (reiterating "frequent admonition" that an employee's own perceptions and opinions of their performance do nothing to suggest pretext because they "cannot tell a reasonable factfinder something about what the employer believed"); *Silverman v. Bd. of Educ.*, 637 F.3d 729, 738 (7th Cir. 2011) ("If such disagreements [about performance] were enough . . . , summary judgment would become extinct and employer's evaluations of employees would be supplanted by federal juries' evaluations.").

All that matters is whether Chung and Kim honestly believed Anderson was failing to meet expectations at the time of her termination. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008) ("The proper inquiry mandates looking at [the employee's] job performance through the eyes of her supervisors . . . ."). In their unchallenged declarations, Chung and Kim honestly believed that Anderson was (1) rude to customers, (2) insubordinate on no less than four occasions, and (3) had received eight negative social media reviews about her. These beliefs were based on Chung and Kim's own observations, reports from other Partners and managers, and Chung's investigations into the guest complaints, which is more than sufficient to draw a conclusion that Anderson was not meeting expectations. *See Isbell v. Baxter Healthcare, Corp.*, 273 F. Supp. 3d 965, 983 (N.D. Ill. 2017) (Pallmeyer, J.) (employer who relied on other workers' reports that plaintiff was not performing

33

well "readily support[s] the conclusion that [the plaintiff] was not meeting expectations").

Anderson's other arguments regarding pretext are equally without merit. The FOTH Handbook does not require a "write-up"—in fact, it explicitly states that a single instance of "insubordination" or "displaying any form of rudeness" is grounds for immediate termination. (R. 58-6, p. 54.) *See also Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 541 (7th Cir. 2007) (employee's argument that employer "overreacted to her [rude] behavior" did not show pretext even if employer did not follow handbook protocols when terminating her).

Anderson also speculates that if the negative social media reviews were about her, then Olateju "would have said something." But speculations like this do not create issues of fact. *See Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) ("[I]n many employment discrimination cases[,] the plaintiff unsuccessfully attempts to thwart summary judgment by speculating as to the defendant/employer's state of mind.").

Likewise, Anderson speculates that she would never have been "promoted" to "lead host" if the negative social media reviews were about her. But, even if she was "promoted" in the traditional sense, as the District Court correctly noted, "it cannot be that if a person was promoted once, any subsequent termination is immediately suspect." (A. 222.) What matters in a discrimination case is Mott Street's beliefs about Anderson's performance "***at the time of her termination***." *See Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 336 (7th Cir. 1991) (prior positive

34

performance reviews did not contradict employer's claim that the employee was not performing well "at the time of his termination."); *see also Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004) ("[T]he fact that [plaintiff/employee] may have met expectations in the past is irrelevant; she must show that she was meeting expectations at the time of her termination.").

Indeed, if Chung "promoted" Anderson, that actually cuts against her discrimination claim, because Chung would have never "promoted" Anderson only to discriminate against her a short time later. *See e.g. Perez v. Thorntons, Inc.*, 731 F.3d 699, 710 (7th Cir. 2013) ("reasonable inference" that discrimination was not a factor when the same decision maker hires or promotes a worker and then terminates them); *see also Anderson v. Stauffer Chem. Co.*, 965 F.2d 397, 403 (7th Cir. 1992) ("The fact that an employee does some things well does not mean that any reason given for [her] firing is a pretext for discrimination. Further, to show pretext, it does not help for [the plaintiff] to repeat the proof that [her] job performance was generally satisfactory."). Since Anderson makes no showing that Chung and Kim's beliefs were insincere, her claim fails for this additional reason.

### e.  There is no inference of sex discrimination.

With all the evidence considered "in a single pile," no reasonable fact-finder could conclude that Anderson was terminated because she is a woman. Mott Street is 50% women owned, and many women serve in key management positions, including FOTH Manager Lola Olateju—*who Chung promoted from host during Anderson's employment*. The host that Chung hired to replace Anderson was female,

and so were eight of the nine hosts hired thereafter. And, Mott Street has terminated FOTH male workers for similar misconduct. Chung hired Anderson in 2017 knowing that she was a woman, and it makes no sense that after such serious guest complaints, rude behavior, and repeated insubordination, that Chung would terminate Anderson two years later because she was a woman—and, of course, he did not. Mott Street was plainly entitled to summary judgment on this count.

## IV.    Anderson was not subject to retaliation.

### a. *Legal Standard*

Title VII's anti-retaliation provision prohibits employers from discriminating against an employee "because the employee filed a complaint or participated in an investigation of an unlawful employment practice." *Robertson v. Wis. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020); 42 U.S.C. § 2000e-3(a). To survive summary judgment, Anderson "must produce enough evidence for a reasonable jury to conclude that (1) she engaged in a statutorily protected activity; (2) the [employer] took a materially adverse action against her; and (3) there existed a but-for causal connection between the two." *Robertson,* 949 F.3d at 378. If she does, the burden shifts to Mott Street to "produce evidence which, if taken as true, would permit the conclusion that it had a legitimate non-discriminatory reason for taking the adverse employment action." *Id*. From there, to avoid summary judgment, Anderson must show that the proffered reasons were pretextual. *Id*. She fails on all elements.

### b. Anderson's retaliation claim has been waived.

As with her harassment claim, nearly all of the arguments and authorities supporting Anderson's retaliation claim are being presented for the first time on appeal, which means they are waived. (*See e.g.* R. 63, p. 5.) The Court may affirm on this basis alone.

### c. Anderson did not engage in any "protected activity."

Retaliation claims are built around a decisionmaker's knowledge of an employee's statutorily "protected activity." *See e.g. Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). While lodging an internal complaint can, in some circumstances, constitute protected activity, "the complaint must indicate the discrimination occurred because of sex . . . or some other protected class." *Id*. "Merely complaining in **general terms** of discrimination or harassment, without indicating a connection to a protected class . . . is insufficient." *Id*. (emphasis added) "The protected activity must be specifically identified." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014).

A protected activity is "more than simply a complaint about some situation at work," and simply being a member (or even the sole member) of a protected class— without more—does not transform general workplace gripes into a "protected activity." *Cole v. Bd. of Trs.*, 838 F.3d 888, 901 (7th Cir. 2016). Using buzzwords like being "harassed," "targeted," or "picked on" without a specific nexus to a protected class is insufficient. *Miller v. Chi. Transit Auth.*, 20 F.4th 1148, 1155 (7th Cir. 2021); *Swinney v. Ill. State Police*, 332 F. App'x 316, 318 (7th Cir. 2009). Vague

complaints buried in reports of other workplace concerns are similarly insufficient. *See Durkin v. City of Chi.*, 341 F.3d 606, 615 (7th Cir. 2003) (complaints that were "vague and concerned subject matters other than harassment" were not statutorily protected activities); *see also Gates*, 513 F.3d at 689 (use of the term "glass ceiling" to imply gender discrimination in a "sea of more generalized grievances about job dissatisfaction" was insufficient).

While Anderson barely addressed the September 22nd Email on summary judgment, it is front and center in her appeal. But Anderson specifically testified that the September 22nd Email—whenever it was sent—**had nothing to do with her termination**. (*See* A. 62 [Tr. I 83:6-18].) Even so, neither Chung nor Kim knew anything about the September 22nd Email at the time of Anderson's termination, since Olateju did not forward it to them until several days later. *See Luckie*, 389 F.3d at 715 (not enough for employee to show that employer "*could* or even *should* have known" about complaints—employee must show actual knowledge [emphasis in original]).

The only other basis for Anderson's "retaliation" claim is the August 26th Email, which suffers similar problems. Not only did Chung and Kim know nothing about this email either, it is not even a protected activity under Title VII. In the August 26th Email, Anderson merely buried a few buzzwords in a "sea of more generalized grievances," conclusively asserting that the restaurant was "extremely hostile" and "men at Mott St. do and say very inappropriate things which I find to be very disrespectful and uncomfortable." On what basis? Anderson doesn't say,

which means it is not a protected activity under *Tomanovich, Durkin,* and *Gates*. Even Anderson herself admitted that there was nothing specifically related to "harassment" or "discrimination" in her August 26th Email (A-59 [Tr. I 70:6-18]), which is also dispositive, since she must have had a "subjective (sincere, good faith) belief that [she] opposed an unlawful practice" for a communication to constitute a protected activity. *See Logan v. City of Chi.*, 4 F.4th 529, 538 (7th Cir. 2021).

Perhaps conceding that she did not *really* engage in a statutorily protected activity, Anderson confusingly argues that Mott Street "prevented [her] from fully engaging in a protected activity" (Brief p. 29-30), which is utter nonsense, particularly since she had no problem emailing Olateju about every little concern that she had. *See also Shaw v. AutoZone*, Inc., 180 F.3d 806, 813 (7th Cir. 1999) ("[A]n employee's subjective fears of confrontation, unpleasantness or retaliation do not alleviate the employee's duty . . . to alert the employer to the allegedly hostile environment.").

### d. There was no causal connection between Anderson's termination and the emails she sent.

Regardless of whether the emails were "protected activity" or whether the decisionmakers knew about them, Anderson admitted that the ***only*** evidence of causation that she had was the "time frame" between the August 26th Email and her termination about a month later. (A. 114 [Tr. II 161:13-23].) But the Seventh Circuit has repeatedly confirmed that "timing alone" is rarely sufficient to permit an inference of retaliation and has affirmed summary judgment in retaliation cases with even shorter time frames. *See Brown v. Bd. of Trs. of the Univ. of Ill.*, 673 F.

App'x 550, 554 (7th Cir. 2016) (no inference of retaliation when employee was terminated two weeks after filing EEOC charge).

The cases cited by Anderson (again for the first time on appeal) are unhelpful. Both *Loudermilk* and *Casna* were those "extreme" cases which dealt with terminations that essentially occurred **one day** after the protected activities, which is not at all what happened here. *Loudermilk v. Best Pallet Co.*, LLC, 636 F.3d 312, 315 (7th Cir. 2011); *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009).

e.     ***There was no pretext.***

As discussed above, Anderson was terminated for being rude, insubordinate, and receiving eight negative social media reviews, and she has presented no evidence to suggest otherwise.[16] Indeed, Anderson was treated no differently than similarly situated employees who undisputedly did **not** engage in any statutorily protected activity (*i.e.* Jonathan Tribbey, Eric Blass, and Garrett Douthitt). All this confirms that Mott Street enforces its policies equally, regardless of whether one engages in a protected act and regardless of one's sex, and Anderson's claims are entirely baseless. End of story.

---

[16] Anderson also argues that Chung was "passive aggressive" toward her, which is not an adverse act to support a retaliation claim. *See Robertson*, 949 F.3d at 382 (getting the "cold shoulder" or "snubbing by supervisors" is not actionable retaliation). She also confusingly argues that Mott Street's "refusal to place Anderson as a serving assistant" was an adverse act. Not only is this argument undeveloped and presented for the first time on appeal, but Anderson failed to present any evidence that there was an open "server assistant" position, that she applied for the position, who Mott Street selected for the position and that person's credentials, or how a refusal was a materially adverse action. *See Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 892 (7th Cir. 2016) (an employee alleging an unlawful failure to promote, must establish that she was qualified for the position, applied and was rejected for the position, and someone outside her protected class was selected who was not better qualified).

## **<u>CONCLUSION</u>**

There is absolutely nothing in the record to disturb the District Court's thorough, thoughtful, and well-reasoned opinion granting summary judgment in favor of Mott Street. For the reasons stated herein, the Circuit Court of Appeals should affirm the District Court's decision in its entirety.

Dated: March 29, 2024

    RESPECTFULLY SUBMITTED,


    <u>/s/ Brian J. Sharpe</u>
    Brian J. Sharpe
    TROESTER SHARPE, P.C.
    1200 Shermer Road, Suite 425
    Northbrook, Illinois 60062
    (847) 786-2505
    bsharpe@troestersharpe.com
    *Attorney for Defendant-Appellee*
    *Mott Street*

## **CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and the Seventh Circuit's Local Rule 32, because this document contains 11,531 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because this document has been prepared in a proportionally-spaced typeface using Microsoft Word for Microsoft 365 in 12-point Century Schoolbook style font.

Dated: March 29, 2024

Respectfully Submitted,

/s/ Brian Sharpe
Brian Sharpe
Troester Sharpe, P.C.
1200 Shermer Road, Suite 425
Northbrook, Illinois 60062
(847) 786-2505
bsharpe@troestersharpe.com
*Attorney for Defendant-Appellee*
*Mott Street*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2024, the Brief of Defendant-Appellee Mott Street was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ Brian Sharpe
Brian Sharpe
TROESTER SHARPE, P.C.
1200 Shermer Road, Suite 425
Northbrook, Illinois 60062
(847) 786-2505
bsharpe@troestersharpe.com
*Attorney for Defendant-Appellee*
*Mott Street*